**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**PKFINANS INTERNATIONAL CORPO-RATION, Defendant–Appellee.**

**Nos. 793, 794, Dockets 89–7775, 89–9041.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1990.

Decided May 29, 1990.

Leigh R. Isaacs, New York City (Kroll & Tract, New York City, Sol Kroll, on the brief), for plaintiff-appellant.

Jill Levi, New York City (Feltman, Karesh, Major & Farbman, New York City, John I. Karesh, Donald F. Schneider, on the brief), for defendant-appellee.

Before OAKES, Chief Judge, and KEARSE and FLETCHER,* Circuit Judges.

PER CURIAM.

United States Fire Insurance Company (USFIC) appeals from the district court's grant of summary judgment to PKFinans International Corporation (PK). USFIC sought a declaratory judgment that its policy insuring PK's loan to CFG Aircraft II, Inc. (CFG) was void because PK and CFG had amended the promissory note without USFIC's consent, thereby violating the insurance policy's terms. PK counterclaimed, seeking payment under the policy. We affirm on the basis that the amendment

* Honorable Betty B. Fletcher, United States Circuit Judge for the Ninth Circuit, sitting by desig-nation.

did not increase the insurer's risk over the policy's term.

## FACTS

CFG borrowed $3 million from PK. USFIC insured PK against default by CFG on the loan. In the insurance contract between PK and USFIC, PK promised not to change the loan agreement or the promissory note without USFIC's consent if the modification increased the aggregate amount of principal payable.

About five months after repayment began, PK and CFG amended the note without USFIC's consent. They lowered the interest rate substantially and increased the principal; PK advanced additional funds to CFG. The amount of the monthly payments remained the same, but the lower interest rate decreased the total amount payable over the life of the loan (principal plus interest if paid according to schedule) by $70,000, thereby shortening the loan repayment period by one month. They also credited the first post-amendment payment entirely to principal. Thus USFIC's total exposure over the life of the loan was reduced.

About two and a half years after the amendment date, CFG defaulted. USFIC refused to pay under the policy, alleging that the amendment voided the contract, and filed this declaratory judgment action. PK counterclaimed for payment under the policy. Both parties filed summary judgment motions.

USFIC argued before the district court that the amendment to the promissory note changed the ratio of loan principal to interest, breaching the insurance policy's warranty and increasing USFIC's risk of loss in the event of default. PK responded that (1) the monthly payments remained the same; (2) the first post-amendment payment was credited entirely to principal, mitigating the increase in outstanding principal; (3) the decrease in total due on the

loan (principal plus interest) if paid per schedule and the elimination of the final monthly payment reduced USFIC's total exposure in connection with the loan.

The district court agreed with PK and granted summary judgment in its favor. It held that the change in principal-to-interest ratio "did not increase the aggregate amount" due and did not materially alter USFIC's risk. United States Fire Ins. Co. v. PKFinans Int'l Corp., No. 88 Civ. 8152 (S.D.N.Y. June 27, 1989) (unpublished memorandum).

## DISCUSSION

The modification of the loan violated the warranty in the insurance contract not to increase the principal amount of the loan without consent. However, a New York statute provides that "[a] breach of warranty shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract." N.Y. Ins. Law § 3106(b) (McKinney 1985). USFIC has both explicitly and implicitly argued that a simple breach of the warranty, a simple change in USFIC's exposure to loss, is enough to avoid the insurance contract. USFIC encourages us to apply the wrong standard. Under the statute, we must determine whether PK's breach materially increased USFIC's risk of loss.

Over the insurance contract's life,[1] the breach did not result in such a material increase. The borrower's monthly burden remained the same, with no increase in the monthly payment. Under the revised repayment schedule, the total principal and interest to be repaid actually decreased by $70,000, thereby diminishing the insurer's overall risk. PK and CFG eliminated the final monthly payment to account for this decrease, also benefiting USFIC by decreasing the time it was at risk.[2]

1. Because the statute speaks about risk of loss, not actual loss, we must consider the possibility of loss over the policy's entire life, not at the time of any actual loss. USFIC in fact suffered no actual loss since at the time of CFG's default,

the principal due was less under the new repayment schedule than the old.

2. These factors are relevant to our assessment of whether the amendments materially increased the risk of loss to the insurer. The

The only possible way that the risk of loss could be greater under the amended promissory note would be if the insurer had the right to repay in the event of the borrower's default *and* the default occurred when the principal due was greater under the amended loan repayment schedule than under the original schedule *and* current interest rates were less than those payable under the amended loan.[3] USFIC did not argue to the district court, as it has to us, that it had the right to repay the loan in the event of default and that such a right made the principal increase material. We decline to consider the prepayment issue, which would require us to address factual and legal arguments made for the first time on appeal. *See Madrigal Audio Laboratories, Inc. v. Cello, Ltd.*, 799 F.2d 814, 820–21 (2d Cir.1986).[4]

## CONCLUSION

We conclude that the district court correctly found that the change in principal-to-interest ratio resulting from the modification to the promissory note did not materially increase USFIC's risk of loss. The amendment actually benefited USFIC in several ways. We affirm the district court's grant of summary judgment to PK.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent. It appears to me that there is, at the very least, a genuine issue of material fact as to whether the action of defendant PKFinans International Corporation ("PK") in modifying a loan agreement without the consent of plaintiff United States Fire Insurance Company ("USF") materially increased the risk of loss to USF under an insuring agreement between USF and PK.

As indicated in the majority opinion, PK entered into an agreement with CFG Air-

craft II, Inc. ("CFG"), to lend CFG some $3 million (the "Loan Agreement"). USF and PK entered into an insuring agreement pursuant to which USF agreed to guarantee repayment of the loan in the event of a default by CFG. To the extent pertinent here, in the insuring agreement PK warranted that PK and CFG

> shall not, without the prior consent of [USF] (a) amend or modify the Loan Agreement ... if the effect of such amendment or modification shall be to increase the aggregate amounts of principal payable under the Loan Agreement ... or advance the dates for payment of principal or interest under the Loan Agreement.

Thereafter, PK agreed, without the consent of USF, to increase the principal amount of its loan to CFG by some $200,000. PK thus breached its warranty.

New York law does not permit an insurance company to avoid an insurance contract because of breach of warranty "unless such breach materially increases the risk of loss ... within the coverage of the contract." N.Y. Ins. Law § 3106(b) (McKinney 1985). The district court ruled, and the majority agrees, that the modification by PK and CFG did not entitle USF to avoid its agreement with PK because when the principal on CFG's loan was increased, the interest rate was decreased, causing the total of principal plus interest to be reduced over the entire term of the loan.

The majority, though it correctly notes that the New York statute speaks in terms of "risk" of loss, not actual loss, appears to base its conclusion that there was no material increase in the risk of loss on the fact that, because of the timing of CFG's default, there was no actual loss. See majority opinion *ante*, note 1. Further, one of the majority's rationales for rejecting USF's contention that the risk of loss had

dissent mistakenly suggests our decision turns on the fact that USFIC suffered less actual loss.

**3.** The second condition held true during about half of the amended promissory note's term, but PK and CFG significantly decreased even this risk by attributing the first post-amendment monthly payment entirely to principal. During about the last half of the amended note term,

the principal was *less* than under the original note.

**4.** We also decline to consider other new claims USFIC has made on appeal: that the elimination of the last monthly payment materially increased USFIC's risk and that the promissory note modification decreased CFG's stake in the loan, increasing USFIC's risk.

been materially increased in light of USF's right of prepayment is that from the outset it was hypothetically possible for the timing of a default to result in no actual loss. See *id.*, text accompanying note 3.

In so reasoning, the majority has, I believe, transformed the test from risk of loss to actual loss. I think it indisputable that the modification agreed to by PK and CFG without USF's consent increased USF's *risk* of loss. As of that moment and for some time thereafter, if CFG defaulted, the unpaid amount of principal that USF would be required to pay was greater than the amount it would have had to pay under the original loan. As I read the insuring agreement, USF had the right, in the event of a default by CFG, to prepay the principal without penalty; but because of the increase in principal, the exercise of this option would have cost USF more under the modified agreement than under the original agreement.

The majority also declines to consider the prepayment factor on the ground that USF did not argue to the district court that it would have had the right to prepay. I believe we should exercise our discretion, *see Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2885, 49 L.Ed.2d 826 (1976), to consider, or at least to allow a jury to consider, the effect of part of a contract that is the center of the controversy, instead of upholding summary judgment against a party on the basis of a questionable application of New York law.

In sum, it is not clear to me that USF is not entitled to judgment in its favor as a matter of law. It is clear to me that judgment should not have been entered against it as a matter of law. Accordingly, I dissent.